THE STATE ex inf. HADLEY, Attorney-General, v. GOFFEE et al.

In Banc, January 23, 1906.

1. **QUO WARRANTO: Proper Remedy: Private Weighmasters: Intrusion: Pleading.** The members of the board of trade of a city have the right on their own account to employ men to weigh their grain for them and accept their certificate of weight, even if it is the duty of State weighmasters, under the law, to weigh the same grain and give certificates of weight. And where it is not alleged in the information that the weighers so employed by them are claiming to act under the statute relating to official weighmasters, and nothing more is alleged than that said members refuse to permit the official weighmasters to weigh grain received in their warehouses and to accept the certificates of the official weighmasters and pay them the lawful fees for the same, it is doubtful if *quo warranto* is the proper remedy. But where it is alleged in the information, and not denied in the answer, that respondents refuse to allow the official weighmasters to weigh any grain except that consigned to

public warehouses, and counsel on both sides recognize that as an intrusion of the unofficial weighers into the office of the official weighmasters, the court may consider the legal questions presented, in a *quo warranto* proceeding.

2. **EVIDENCE: Certificates of Official Weighmasters: Right of Buyer or Seller of Grain.** Even if the law gives to the certificate of a State weighmaster a legal effect as evidence, still the members of a board of trade or any other person buying or selling the grain has the legal right to have it weighed by some other weigher and to base his business transactions on the certificate of such unofficial weigher.

3. ————: ————: **Prima Facie and Conclusive: Statute.** The statute cannot give the official certificate of a State weighmaster the force of conclusive evidence. It could give it the force of prima-facie evidence, and in doing so it violates no constitutional right. But it cannot go further and make it conclusive evidence, for that would be to deny to the party whose rights were affected the right of trial under due process of law.

4. **GRAIN INSPECTION: Private Warehouses: Sec. 7676, R. S. 1899.** Section 7676, Revised Statutes 1899, says: "It shall be the duty of the chief inspector provided for by this article to nominate to the commissioners suitable persons to act as weighmasters at such points in this State wherever State grain inspection may be established in conformity with section 7655 of this article." *Held,* that the reference to section 7655 was not made for the purpose of ascertaining where State grain inspection is established, because section 7655 does not relate to that subject, but to the manner in which the appointments are to be made. Hence, this clause, on the authority of State ex rel. v. Smith, 114 Mo. 180, cannot be held to establish State grain inspection at public warehouses only. That clause, in spite of its lack of proper punctuation, means that wherever State inspection is established there should also be State weighing, and that the weighers should be appointed in the same manner that State inspectors are appointed under section 7655.

5. ————: **Public Warehouse: · Judgment on Pleadings: Admission.** Where the respondent members of the Board of Trade state in their answer that the grain weighed by the weighers appointed by them does not go into or come out of public warehouses, and the case is submitted on the Attorney-General's motion for judgment on the pleadings, the court will take the statement in the answer as a fact, that the warehouses are not public warehouses, within the meaning of the statute defining a public warehouse for the purposes of grain inspection and weighing.

6. ———: ———: **Weighing Grain: Amendatory Statute.** The effect of the amendments to the grain inspection act made in 1893, now sections 7676 to 7680, Revised Statutes 1899, relating to the weighing of grain, is that State weighmasters shall supervise the weighing of grain "subject for inspection." The amendments do not authorize the official weighmasters to weigh any grain except such as was at the date of the amendments subject to inspection, and that meant grain passing into or going out of a public warehouse.

7 ———: ———: ———: **Private Warehouses.** The law does not authorize the official inspection or weighing of grain other than that going into or out of public warehouses.

8. ———: **Private Warehouses: Police Regulation.** The General Assembly, in the exercise of its police power, has constitutional authority to throw around those who ship grain to the great markets in this State the protection of official inspection and official weighing of the grain, whether the grain is shipped to a public or to private warehouses. But the present statutes provide for State inspection and the State weighing of grain going into or out of public warehouses only.

9. **LAW: Intention: Legislative Erroneous Supposition.** The courts give effect to the intention of the General Assembly, but that intention must be gathered from the act itself and from the expression of legislaive purpose to make it a law. They cannot give the force of law to what was not the law at the time, merely because it appears from language used in an amendment to that law that the lawmakers erroneously supposed it was the law.

## Quo Warranto.

JUDGMENT FOR RESPONDENTS.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for informant.

(1) The Act of 1893 makes the weighing of grain a part of the inspection of grain and requires that all grain which is "subject for inspection" and is inspected by State Inspectors, should be weighed by State weighmasters, whether such grain goes into or out of public or private warehouses or elevators, or is contained in "cars, barges, wagons or sacks." Sec. 5632, R. S. 1889 (sec. 7650, R. S. 1899) ; sec. 5620, R. S. 1889

State ex inf. v. Goffee.

(sec. 7638, R. S. 1899) ; secs. 5657a, 5657b, 5657c, 5657d, 5657e, 5657f, Laws 1893, p. 182. (2) Under the facts charged in the information and admitted by respondents in their answer, the law is well settled that it is within the police power of the State to provide such regulations to prevent imposition and injustice to the general public, in the carrying on of a business which, by reason of being a monopoly, is necessarily impressed with a public use. Munn v. Illinois, 94 U. S. 113; Munn v. People, 69 Ill. 80; Cooley's Const. Lim., 870, 889, 889; Budd v. New York, 143 U. S. 517; Brass v. N. Dakota, U. S. 391; St. Louis v. McCann, 157 Mo. 301; Morrison v. Morey, 146 Mo. 543; Land & Stock Co. v. Miller, 170 Mo. 240; State v. Tie & Timber Co. 181 Mo. 536; St. Charles v. Elsner, 165 Mo. 671; State ex rel. v. Mercantile Co., 184 Mo. 160; 30 Am. and Eng. Ency. Law, 451; Vega Steamship v. Consolidated Elevator Co., 75 Minn. 308; People v. Rochester, 45 Hun 102; Gaines v. Coates, 51 Miss. 335; Pittsburgh Coal Co. v. Louisana, 156 U. S. 590. (3) State inspection laws are not repugnant to section 8, article 1, of the Federal Constitution, even though they may incidentally affect commerce carried on by citizens of the different States. Wilson v. Railroad, 60 Mo. 184; Kenney v. Railroad, 62 Mo. 467; Gilman v. Railroad, 67 Mo. 323; State ex rel. v. Mercantile Co., 184 Mo. 160. (4) It is contended by respondents that "The law is unconstitutional because it is a delegation of legislative power in this, that the Board of Railroad and Warehouse Commissioners is permitted to fix the rules and regulations for weighing grain, and to fix the fees therefor." It might be a sufficient answer to this contention to say that if the power to provide for the weighing of grain by State weighmasters is conferred upon the Board of Railroad and Warehouse Commissioners, the matter of fixing the fee for such weighing would be implied as incident to the power conferred;

or, as said in the case of the People v. Harper, 91 Ill. 370, "the difficulties that may be encountered in the practical execution of the law are never regarded as of controlling significance in determining its constitutionality." State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Laclede Gas Light Co., 102 Mo. 472.

*Frank Hagerman* and *Robert F. Walker* for respondents.

(1) The Board of Railroad and Warehouse Commissioners has no power to appoint weighmasters to weigh grain that does not go into or out of public warehouses. So much of article 3 of chapter 117, Revised Statutes 1899, as is contained in sections 7623-7676, is limited to public warehouses or elevators, and under these sections there is no power to appoint inspectors, except for the inspection of grain at public warehouses. If such be the true construction of the previous sections of the same article, it would require plain words to show that the subsequent sections were not likewise limited, for "this is a criminal law in part and must be construed strictly." State ex rel. v. Smith, 114 Mo. 194. Section 7676 should be limited to weighing of grain at public warehouses. (a) There is no power to appoint persons to act as weighmasters at points other than where grain inspection is established under section 7655, which was section 5637, Revised Statutes 1889, and section 33 of Laws of 1889, p. 132. The duties of the inspector so appointed are defined in section 7658, Revised Statutes 1899, which was section 5640, Revised Statutes 1889, and section 36 of Laws of 1899, p. 132. All rules, regulations and charges must not, in the language of this section, be "inconsistent with this article," i. e., article 3, chapter 117, Revised Statutes 1899, which in State ex rel. v. Smith, 114 Mo. 180, was held to apply to public warehouses only. Therefore, when section 7676 provided for the appointment of persons

to act as weighmasters at points where State grain inspection may be established in accordance with section .7655, the plain meaning is that they can only be appointed to act where the grain is consigned to a public warehouse. The rest of the section confirms this construction, because it provides how the grain is to be weighed, whether there be installed or not what are known as "hopper scales." The warehouse thus referred to is the public warehouse, as defined in section 7625, and provided for in sections 7626 to 7631. Sections 7630 and 7631 leave no doubt about this, because specific provision is made that no grain shall be received by or delivered from the public warehouse, defined by the article, unless it shall have been inspected by the inspectors. To say otherwise, gives the act "such a construction" as "is at variance with the other sections of the law. The act must be construed as a whole." State ex rel. v. Smith, 114 Mo. 187. (b) So far there would probably be no difficulty between counsel. Any doubt which exists arises by virtue of section 7679. No such scales as are contemplated by this section have as yet been provided. Until the railroads have provided scales in accordance with this section, located at places designated by the board, there can be no weighing in accordance with its provisions, and there is no other section of the statute from which the right to weigh grain, other than that going into public elevators, can even be implied. (c) But section 7679 ought not to be construed as contended. What the Legislature had in mind was this: all grain consigned to, or stored in, public warehouses should be weighed before it went into same, and before it left the cars. This was a matter solely between the warehouseman and the owner, and hence the warehouseman should be required to provide the scales used for such purpose. When, however, the grain was shipped out, the railroad company being required to issue a bill of lading showing the weight of the shipment, it was interested in having pro-

per scales provided.   Hence for grain consigned to a public elevator, section 7678 expressly provides that the warehouseman should provide the scales. But for grain consigned out of public elevators, section 7679 provided.   This made the law consistent.   It placed the duty where it belonged.   For grain shipped into public elevators, the warehouseman, issuing the warehouse certificate, should provide its own scales; for grain shipped therefrom, the railroad company issuing the bill of lading, showing the weight, was the one interested in providing the scales.   It is plain that when the grain was shipped out, whether when sold, or after having been cleaned or mixed in accordance with sections 7632, 7633 and 7635, it was necessary for the railroad company to have it weighed, because, under section 1116, Revised Statutes 1899, it is required to ''carefully and correctly weigh the same and issue to the shipper thereof a receipt or bill of lading for such grain, in which shall be stated the true and correct weight.''     (2) If the statute provides for the appointment of weighmasters for the private business of grain merchants, it is unconstitutional.    State v. Tie & Timber Co., 181 Mo. 536; State ex rel. v. Associated Press. 159 Mo. 410.   The attempted legislative control of private business which individuals have a natural right to engage in, has been condemned in the following instances: Prohibition against manufacturing and mining concerns paying for labor other than in money: State v. Loomis, 115 Mo. 307; State v. Tie & Timber Co., 181 Mo. 536; Godcharles v. Wigaman, 113 Pa. St. 431; State v. Goodwill, 33 W. Va. 179; State v. Coal & Coke Co., 33 W. Va. 188; State v. Hann, 61 Kan. 146.   Prohibiting the discharge of a servant, because a member of a labor organization: State v. Julow, 129 Mo. 163; Coffeyville Vitrified Brick Co. v. Perry, 69 Kan. 306.   Requiring operators of coal mines to weigh all coal before it was screened and pay on such weights: Millett v. People, 117 Ill. 294; Ramsey v. People, 142 Ill. 380; Harding v. People, 160 Ill.

459. Prohibiting sale of railroad tickets by ticket brokers: People v. Warden, 157 N. Y. 116. Requiring licenses and bonds from commission merchants selling farm products: People v. Coolidge, 124 Mich. 64. Prohibiting giving of premiums with purchases made of goods: People v. Gillson, 109 N. Y. 389. Prohibiting the location of a laundry in certain districts: Ex Parte Sing Lee, 96 Cal. 354; Yick Wo v. Hopkins, 118 U. S. 356. Providing that when a merchant takes from a minor an assignment of his wages, in consideration of anything but money, the debt shall be at once payable in cash: Dixson v. Poe, 159 Ind. 492. Requiring wages of certain employees to be paid at least every six days: Braceville Coal Co. v. People, 147 Ill. 66. Prohibiting garbage plants within the borough of Brooklyn, where such would not constitute a nuisance: New York Sanitary Utilization Co. v. Dept. Board of Health, 32 N. Y. (Misc.) 577. (3) Even if constitutional power exists to provide for weighmasters in the private business of grain dealers, still section 7676 is unconstitutional. It provides that "the inspection of scales and the action and certificate of such weighmasters in the discharge of their aforesaid duties, shall be conclusive upon all parties in interest." The attempt to make conclusive upon all parties in interest the decisions of these administrative officers upon questions of fact, is a clear appropriation of the judicial function of settling controversies of fact according to the procedure which gives all parties interested a right to present evidence and to be heard. Railroad v. Minnesota, 134 U. S. 418; Railroad v. Simonson, 64 Kan. 802; Felix v. Wallace County, 62 Kan. 832; Railroad v. Payne, 33 Ark. 819; Meyer v. Berlandi, 39 Minn. 438. (4) Sections 7676 and 7679 are unconstitutional because they attempt to regulate interstate shipments. 17 Am. and Eng. Ency. Law (2 Ed.), 76; Railroad v. Railroad Commissioners, 19 Fed. 679; State ex rel. v. Oil, etc., 120 Ind. 575; Baldwin v. Franks, 120 U. S. 678; Poindexter v. Greenhow,

114 U. S. 270; United States v. Reese, 92 U. S. 214; Griffin v. State, 119 Ind. 520.

VALLIANT, J.—The information filed by the Attorney-General gives the court to understand that respondents Goffee and others are officers of the Board of Trade of Kansas City, and that respondents Miller and others have been appointed by that board to weigh grain brought to or shipped from that market, and under such appointment have usurped the office of weighmasters created by law under article 3 of chapter 117, Revised Statutes 1899, entitled, "Inspection of Grain," and have excluded therefrom certain persons named, to-wit, J. T. Bradshaw and others, who were duly appointed by the Board of Railroad and Warehouse Commissioners and who have qualified according to law; that respondents refuse to permit the official weighmasters to weigh any grain except such as is received into or sent out of a public warehouse, and the members of the Board of Trade refuse to accept the certificates of the State weighmasters as to the weight of grain or to pay the lawful fees for the same except grain going into or out of a public warehouse.

The answer of respondents admits that the Board of Trade have appointed Miller and other respondents named as weighmasters, and that they do now weigh for the members of the Board of Trade all grain handled by them in that market except what goes into public warehouses, and that the Board of Trade accepts the certificates of weight furnished by them, but they deny that in so doing the weighers appointed by the Board of Trade usurp the office of the State weighmasters. They say that the weighmasters appointed by the Board of Railroad and Warehouse Commissioners have authority under the statute to weigh only grain that goes into a public warehouse, but that the weighing of their grain that does not go into a public warehouse is a matter of their own private business with which the

State has nothing to do. They say that under the law the State inspectors have no authority to inspect any grain except that which goes into a public warehouse, but that the State inspectors have for a long time, for convenience, been permitted by respondents to inspect all grain dealt in by them, whether coming from or going into public elevators or elsewhere, except that sold by sample and upon actual examination; the result being that all grain handled in that market, except as above stated, is sold on certificate of the State inspector as to classification, but on certificate of respondents' weighers as to weight.

They say to construe the statute to mean that they cannot buy and sell grain which does not go into a public warehouse without having it inspected by a State inspector and weighed by a State weigher, would be to bring the statute in conflict with sections 4 and 30 of article 2 of our State Constitution, and section 8 of article 1 and the fourteenth amendment of our Federal Constitution.

The cause is submitted on a motion of the Attorney-General for judgment on the pleadings.

I. If all that the Attorney-General claims as the official rights of the State weighmasters be conceded, it is still doubtful if *quo warranto* is the proper remedy. The members of the Board of Trade have a right on their own account to employ men to weigh their grain for them and to accept their certificates of weight, even if it is the duty of the State weighmasters also to weigh the same grain and to give certificates of the weights. And if the law gives to the certificates of the State weighmaster a legal effect as evidence, still if the person buying or selling the grain should prefer to have it weighed by some other person and to base his business transaction in reference to it on the unofficial rather than the official certificates, he would have a right to do so. Such a course would not prevent the State weighmaster from performing his official duty or deprive him

of his fees. The statute, of course, could not give to the official certificate the force of conclusive evidence, because that would be to deny a party whose rights were affected the right of trial under due process of law. But statutes frequently give official certificates the force of prima-facie evidence and in so doing they violate no constitutional provision.

It is not alleged that respondents, Miller and others, weighers appointed by the Board of Trade, are pretending that they were appointed by the Board of Railroad and Warehouse Commissioners or that they are claiming to act under the statute relating to official weighmasters; they are only weighing the same grain and issuing certificates of the weight thereof that it is alleged in the information it is the official duty of the State weighmasters to weigh and certify. In order to do what they are doing it is not necessary for the unofficial weighers to intrude into the office of the State weighmasters, nor do their weighing and certifying prevent the officials from also weighing and certifying.

But it is alleged in the information, and not denied, that the respondents refuse to allow the State weighmasters to weigh any grain except that consigned to public warehouses, and since counsel on both sides seem to recognize that as an intrusion of the unofficial weighers into the office of the State weighmasters, we will so far defer to the learned counsel as to consider the legal questions in the form presented in their briefs.

II. The statute authorizing the appointment of official weighmasters to weigh grain brought to market in this State was passed in 1893, and is now section 7676, Rev. Stat. 1899, the first sentence of which is: "It shall be the duty of the chief inspector provided for by this article, to nominate to the commissioners suitable persons to act as weighmasters at such points in this State wherever State grain inspection may be established in conformity with section 7655 of this article."

Respondents in their brief interpret that sentence to mean that  wherever State grain inspection is established in conformity with section 7655, State weighmasters are to be appointed, and on that  interpretation they base the argument that since section 7655, Revised Statutes 1899, is exactly the same as section 5637, Revised Statutes 1889, and since the Act of 1899 was interpreted in State ex rel. v. Smith, 114 Mo. 180, to establish State grain inspection at public warehouses only, therefore when section 7676, of the present statute, authorizes, the weighing of grain wherever State grain inspection is established in conformity to section 7655, it means that the weighing of  grain is  authorized at public warehouses only.   The conclusion there drawn would be correct if the interpretation of section 7676 on which the argument is based was correct, but that interpretation is not correct.

The reference in section 7676 to section 7655 is not for the purpose of ascertaining where State inspection is established, because section 7655 does not relate to that subject, but it is for the purpose of ascertaining the manner in which the appointments are to be made. Section 7655, which is the same as section 33 of the original Act of 1889 (Laws 1889, p. 124), was not referred to in the opinion of State ex rel. v. Smith, above cited.    That case turned on the construction of other sections in that act which did provide for the establishment of grain inspection, and it was decided that the act authorized the establishment of State inspection of only such grain as went into or out of public warehouses.

Section 7655 refers only to the manner of appointment of a deputy inspector and assistant inspectors and their qualifications.   Therefore when section 7676 calls for the appointment of weighmasters and refers to 7655, it means that they are to be appointed in the manner therein specified for the appointment of a deputy and assistant inspectors. All the provisions of the stat-

ute for the establishment of State inspector were adopted in preceding sections and then the act, by section 7655, provided for the appointment of a deputy and assistant inspectors in these words:

Sec. 7655. "The said chief inspector shall be authorized to nominate to the commissioners such suitable persons in sufficient numbers as may be deemed qualified for a deputy chief inspector, to be acting chief inspector in the absence of the chief inspector, and assistant inspectors who shall not be interested in any warehouse, and also such other employees as may be necessary to properly conduct the business of his office; and the said commissioners are authorized to make such appointments."

The sentence from section 7676 above quoted has no punctuation except a comma after the word "article" in the second line until it ends with a semicolon. If a comma is placed after the word "commissioners" and after the word "established" there would be less room for misunderstanding of the meaning, but even without punctuation, reading the sentence in the light of the section to which it refers, it can have no other meaning than this: "It shall be the duty of the chief inspector provided for by this article to nominate to the commissioners, in conformity with section 7655 of this article, suitable persons to act as weighmasters at such points in this State wherever State grain inspection may be established." The General Assembly by that act meant to say that wherever State inspection was established there should also be State weighing, and that the weighers should be appointed in the same manner that the State inspectors were appointed as specified in section 7655. If reference to section 7655 is not for the purpose of indicating the manner in which the appointments are to be made it is meaningless, because that section provides for nothing else.

Official grain inspection was first established in this State by an act of the General Assembly in 1889. [Laws

1889, p. 124, which act became art. 3, chap. 87, R. S. 1889, secs. 5605 to 5657.] That act came before this court for interpretation in the case of State ex rel. v. Smith, above cited. In the opinion in that case the title to the act was quoted, in which were these words: "providing for the organization of *public warehouses* and to regulate the warehousing and inspection of grain in *public warehouses.*" Express reference is made in the opinion to section 3 of the act declaring what is embraced in the term "public warehouses," and to sections 8 and 9 which limit the inspection to receipts and deliveries of grain by and from public warehouses, and the conclusion was reached that the act provided for the establishment of inspection of only such grain as was to go into or out of public wharehouses. Since the decision of that case the statutes on this subject have been amended and the question we now have is, Do the amendments require inspection of grain other than that going into or out of public warehouses?

The amendment of March 9, 1893 (section 7676), calls for official weighmasters and official weighing wherever official inspection has been established and not elsewhere, and for the weighing of grain "which may be subject for inspection," not other grain. This must be understood to mean that official weighing is authorized wherever the official inspectors have lawful authority to inspect and when the grain is "subject for inspection," not otherwise, and not even where in point of fact the inspectors do inspect grain not "subject for inspection" by permission of the Board of Trade.

In the answer of respondents it is said that in point of fact for a long time the official inspectors have inspected and do now inspect all grain handled in the Kansas City market, whether or not it goes into or out of a public warehouse and give certificates of classification, but it is said they do so by permission of the Board of Trade; if that is so, no authority to weigh the grain by official weighmasters can be predicated on such ac-

tion; the Board of Trade can neither enlarge nor restrict the lawful authority of the State officials.

The amendments to the Act of 1889 bearing on the question before us, made since the decision of the case above cited, are as follows:

Section 3 of the original Act of 1899, which is section 5607, Revised Statutes 1889, is as follows:

"Sec. 5607. Public warehouses shall embrace all warehouses, elevators and granaries in which is stored grain in bulk, and in which the grain of different owners is mixed together, or in which grain is stored in such a manner that the idenity of different lots cannot be accurately preserved: *Provided,* that no warehouse, elevator or granary with a capacity of less than 50,000 bushels measurement shall be considered a public warehouse."

That section was repealed in 1893 and in lieu thereof a section was enacted which is now section 7625, Revised Statutes 1899, declaring, "All buildings, elevators or warehouses wherever State grain inspection may be established by the State Board of Railroad and Warehouse Commissioners in this State, and having a capacity of not less than fifty thousand bushels . . . for the purpose of storing grain of different owners for a compensation, are hereby declared public warehouses." This amendment has but little if any bearing on the point now under consideration. It defines a public warehouse to be one of the capacity named, kept for the purpose of storing grain of different owners for a compensation. As this case is submitted for judgment on the pleadings, there is no question of fact as to the character of the warehouses used by the members of the Board of Trade in their business. They say in their answer that the grain weighed by the weighers appointed by them does not go into or come out of public warehouses; we must therefore take that as a fact.

In section 39 of the original grain inspection act, being section 5643, Revised Statutes 1889, it was made

a misdemeanor for any one not duly appointed and qualified as required by that act to assume to act as an inspector. That section was amended by the Act of March 31, 1893 (Laws 1893, p. 182), by prefixing to it these words: "The inspection or grading of grain in this State, whether into or out of warehouses, elevators or in cars, barges, wagons or sacks arriving at or shipped from points where State grain inspection is established must be preformed by such persons as may be duly appointed, sworn and have given bond under this act," etc.

The Attorney-General is of the opinion that this amendment means that whilst the law does not make it obligatory on persons dealing in grain, which does not pass through a public warehouse, to have it inspected, yet if they do have it inspected it must be by the official State inspectors. That is probably correct, and it may be that it is on that idea the respondents have conceded to the State inspectors the right to inspect all their grain, regardless of its relation to a public warehouse. But conceding that point does not settle the question in this case, because the official weighmasters are given authority to deal, not with grain which, though not subject to inspection, yet is, by the request of the owner or dealer, inspected, but only with that which is subject to inspection under the law of the State. We, therefore, still have the question, Does the law now under the amendments since 1889 require State inspection of grain that does not go into or out of a public warehouse?

The chief amendment to the Act of 1889 is the Act of March 9, 1893 (Laws 1893, p. 182), entitled, "An act to amend article 3, chapter 87, of the Revised Statutes of Missouri 1889, entitled 'Inspection of Grain,' by adding six sections thereto, to be known as sections 5657a, 5657b, 5657c, 5657d, 5657e, and 5657f." These are now sections 7676 to 7681 inclusive Revised Statutes 1899.

The effect of this amendment was to add to the du-

ties of the Railroad and Warehouse Commissioners, which theretofore as regarded grain sent to market were limited to inspection and classification, the duty of weighing the grain which they were required to inspect. The act was not designed to provide for the weighing of grain as an independent subject, but to add the duty of weighing to the duty of inspecting and have them go together; it was an amendment to the grain inspection law; the official weighmasters were authorized to weigh grain that was "subject for official inspection," nothing else.

It seems to have been assumed by the General Assembly which adopted this amendment that under the law as it had theretofore been enacted, official inspection was not limited to grain going into or out of public warehouses, for there is language in the amendatory act that so implies. It calls, in section 7676, for weighmasters to be appointed "at such points in this State wherever State grain inspection is established," and in section 7679 it says: "At all terminals or other points within this State wherever State grain inspection may be established, it shall be the duty of all the railroads to provide suitable scales upon which all grain handled by them, and not consigned to public warehouses, but subject to inspection, may be weighed as required by this act."

"The points in this State" mentioned in those two sections are not public warehouses where grain is inspected, but are those great markets to which grain is shipped and wherein the Railroad and Warehouse Commissioners have established State inspection, whether there be public warehouses there are not; for example, St. Joseph Kansas City, St. Louis. But the language used indicates that the law-makers were of the opinion that all grain sent to market to either of those points was subject to inspection, or at least that some grain sent to those markets would be subject to State inspection, although not to go into a public warehouse. In section 7676 it is made the duty of the weighmasters to

"supervise the weighing of all grain before moving from the car which may be subject for inspection," and in section 7679 the railroads are to provide scales on which to weigh grain not consigned to a public warehouse "but which is subject to inspection."

The language above quoted from those two sections of the amendatory act, does not purport to declare what grain shall be "subject for inspection," but in the one it declares that the weighmasters shall supervise the weighing of all grain that is subject to State inspection, and in the other it imposes the duty on the railroads to furnish scales on which to weigh grain "not consigned to public warehouse, but subject to inspection." The extent of the lawmaking effect of those two sections is that the weighmasters shall supervise the weighing of grain which is subject to inspection and the railroads shall furnish scales. That lawmaking effect cannot by interpretation be extended beyond its own purport on the ground that the language used implies that the lawmakers were under the impression that the pre-existing law was broader than it really was.

The foregoing is all that there is in the amendatory act of 1893 that furnishes a base for the argument that the law has been so amended since the decision in State ex rel. v. Smith, as to authorize official inspection of grain other than that going into or out of a public warehouse.

There is one section of even this amendatory act that seems, inferentially at least, to limit the weighing of grain to such as goes into a public warehouse; that is section 7677, which authorizes the board of Railroad and Warehouse Commissioners to fix the charges for weighing, and requires the warehouseman to pay the charges and add the amount to the charges for storing. Under the act of April 7, 1893, above quoted, defining a public warehouse to be one in which grain of different owners was stored for a compensation, it would seem that the section providing for the weighing charges to

be paid by the warehouseman and added to the storing charges, meant that it applied only to grain in a public warehouse.

Returning to the consideration of the language above quoted from sections 7676 and 7679, we note that that language does not purport to enlarge the duties of the inspectors or to render grain subject to official inspection that was not before so subject, but it erroneously assumes that grain sent to market to either of the cities in the State where State grain inspection was established was "subject for inspection," though it was not destined to go into a public warehouse. The amendment does not authorize the official weighmasters to weigh any grain except such as was at the date of the amendment already "subject for inspection."

Language in a legislative act which merely shows by implication that the lawmakers were under an erroneous impression as to what the previous law was at the time of the new enactment cannot be construed into a then present enactment as law of that which they erroneously assumed was already the law.

It is the duty of the court to give effect to the intention of the General Assembly, but that intention must be gathered from the act itself and from the expression of legislative purpose to make a law; the court cannot give the force of law to what was not the law at the time, merely because it appears from language used in an act that the lawmakers erroneously supposed it was the law.

The amendatory act of March 9, 1893, which we are now considering does not purport to alter or amend any section of the law as it theretofore existed in reference to State grain inspection; it only adds other sections providing for weighing the grain that by the law theretofore existing was subject to inspection.

It may be that the General Assembly, if it had then understood that grain inspection was by the law, as it then was, limited to public warehouse grain, would have

so amended that law as to include other grain, but that is mere conjecture; we only know that, whether from misapprehension or disinclination, the General Assembly did not so amend this law, and we must take the law as we find it.

We have no doubt of the constitutional authority of the General Assembly in the exercise of the State's police power to throw around persons who ship their grain to market in this State the protection that official inspection and official weighing can give. Without such protection the shipper is at the mercy of those who handle his grain in the great markets, and in the ordinary course of business he has no means, or at least no convenient or adequate means, of verifying the classification and weight of his grain. It is no infringement of the shipper's constitutional rights to tax his grain with reasonable charge for this official service, because whether a particular individual desires to avail himself of the service or not, such service is a wholesome control over the conduct of the business, and the State has the right to interfere for the protection of the public. And besides, there is nothing that could make the markets of this State more attractive to shippers than a reputation for intelligent and honest inspection and weighing.

But whether the police power of the State should be exercised or not in such matters, and if exercised to what extent, are questions in the first instance for the General Assembly and not for the courts. In the law governing the case before us the General Assembly has gone no farther in the exercise of this police power than to provide for State inspection and State weighing of grain going into or out of public warehouses.

We rest our judgment therefore in favor of the respondents, not on the ground that the General Assembly could not, under the Constitution, pass a law requiring inspection and weighing of grain in the great

192 sup—44

markets of this State other than such as goes into or out of a public warehouse, but on the ground that the General Assembly has not done so.

Judgment for respondents. *Marshall, Gantt, Burgess* and *Fox, JJ.*, concur. *Brace, C. J.*, absent; *Lamm, J.*, dissents.