[No. 8670. Department Two. May 11, 1910.]

PUGET SOUND WAREHOUSE COMPANY, *Respondent*, v.
NORTHERN PACIFIC RAILWAY COMPANY,
*Appellant*.[1]

INSPECTION—GRAIN—STATUTES—CONSTRUCTION—TAX FOR INSPECTION. The grain inspection law, Rem. & Bal. Code, § 5980 *et seq.*, entitled an act for the regulation of public warehouses, relating to the shipping, grading and inspection of grain, and defining the duties of railroads, warehousemen, etc., was designed to protect the owner or shipper of grain from frauds practiced by public warehousemen, and is not broad enough to cover the inspection of grain shipped by an owner to himself, the same not being stored in a public warehouse.

SAME—CONSTITUTIONAL LAW—POLICE POWER. A tax for the inspection of grain shipped by the owner to himself cannot be sustained by reference to the police power, where the same was not to go through a public warehouse.

[1]Reported in 108 Pac. 955.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered February 25, 1910, in favor of the plaintiff, upon sustaining a demurrer to the affirmative defense, in an action of replevin. Affirmed.

*The Attorney General, W. V. Tanner, Assistant,* and *George T. Reid,* for appellant.

*Hayden & Langhorne,* for respondent.

CHADWICK, J.—The object of this action is to test the constitutionality of the grain inspection law as amended by the statute of 1909. Laws 1909, chap. 137, p. 519 (Rem. & Bal. Code, § 5980 *et seq.*), in so far as it relates to shipments by and consigned to the owner of grain or other warehouse products referred to in the act. The Puget Sound Warehouse Company was the owner of one carload, three hundred and ten sacks, of wheat, at Creston, Washington, which it loaded upon a car belonging to the Northern Pacific Railway Company, for shipment to Tacoma, Washington. The wheat was consigned by the owner, the warehouse company, to itself, and not for storage in any public warehouse. The wheat was not sold or offered for sale. Upon receipt of the car at Tacoma, the freight charges were tendered by the owner, and delivery of the wheat demanded. This was refused by the railway company, whereupon action was brought to recover possession of the grain. The railway company defending admitted all the material facts, but set up as a legal defense that:

"Under the provisions of chapter 137 of the Laws of 1909 the Railroad Commission of Washington has fixed a fee of seventy-five (75) cents for the inspection and weighing of each carload of grain received in Tacoma over the line of defendant's road, and requires defendant to pay such fee and treat the same as advance charges. Said act makes such fee a lien upon such grain. Upon receiving said car of grain No. 90,744 at Tacoma, defendant made out and presented to plaintiff a bill showing the freight charges thereon to be $77.00, and the inspection fee to be 75 cents, and defendant

thereupon offered to surrender said car of grain to plaintiff upon the payment of said sum of $77.75, but the plaintiff declined to pay said inspection fee and declined to pay any greater sum than the amount of said freight charges. Defendant is ready and willing to deliver said car of grain to plaintiff upon the payment of the sum of $77.75, and the only reason why defendant refuses to deliver said car of grain to plaintiff is because plaintiff declines to pay said inspection fee of 75 cents."

A demurrer to this affirmative defense being sustained, the railway company refused to plead further. Judgment was entered in favor of the warehouse company. The railway company having no interest in the subject-matter of the controversy or in this appeal, briefs were filed and the case is presented on behalf of the state railroad commission by the attorney general.

Upon appeal the respondent urges, as grounds for sustaining the judgment of the trial court, several propositions of · law:

"1st. The statute, to wit: chapter 137 of the session laws of 1909, does not apply to the shipment of grain by a consignor to himself.

"2nd. The statute does not apply in any case to a shipment made to other than a public warehouse.

"3rd. The act does not apply except for grain for milling and export, and passing through a public warehouse at an inspection point.

"4th. If the statute is held to apply to the case of one shipping grain to himself, and to shipments other than to public warehouses, then it is unconstitutional because it is not proper police regulation.

"5th. The statute, if so construed, is unconstitutional because it provides for state inspection and weighing in Seattle, Tacoma, Spokane, and such other cities as the railroad commission may from time to time designate."

From the view we take of this case, it is only necessary to discuss the first, second, and fourth propositions, and these together. It is frankly admitted by the attorney general up-

on oral argument that, if the law is sustained, it must be because it comes within the police power of the state.

That the state has a right to pass inspection laws cannot be doubted, but in all such cases the power must be referable, in some degree, at least, to some recognized subject of police control. Although the state may act arbitrarily in a proper case and its act will be upheld, it cannot do so without reason. The act so plainly carries its own meaning and construction that it would seem to be sufficient to rest our judgment upon its title: "An act for the regulation of public warehouses, relating to the shipping, grading, inspection and weighing of grain and hay, defining the duties of railroads, warehousemen and millers in relation thereto, providing penalties, etc."

It, like the act of 1895, ch. 109, was clearly designed to protect the owner or shipper of grain from the frauds practiced by public warehousemen in returning false weights and grades. The whole tenor of the act, as well as every express declaration, is aimed at the regulation and the protection of the public from the impositions of the warehousemen. Section 9 of the act (Rem. & Bal. Code, § 5988) refers to the charges made by any public warehousemen, providing that they shall be just, fair, and reasonable. Sections 10, 11, 12, 17, 18, 19, 20, 21, and 30 (Rem. & Bal. Code, §§ 5989-5991, 5996-6000, 6009), refer in terms to public warehouses or warehousemen, and do not even inferentially refer to shipments made by an owner which are consigned to himself. There is nothing in the law, nor indeed is it so contended except as it may appear inferentially, to sustain the theory that the state has the right to impose a tax for inspecting grain in the possession of the owner, and which may never be stored or offered for sale. Nor can the act be sustained by reference to the police power of the state. The public can have no possible interest in the character or quality of the grain shipped by an owner from one station in the state of Washington to another, although it be one of the points

designated for inspection. Nor is there anything in the character of the shipment calling for the exercise of this extraordinary power. Grain is not in itself dangerous to handle; it is not perishable so as to become, under ordinary conditions, unfit for food; it is not explosive; it does not carry or breed disease; its shipment or use does not tend in any degree to incite a breach of the peace, lower the moral standards, or encourage crime.

The cases cited in no way bear out the contentions of the state. In the case of *McDaniels v. Connelly Shoe Co.*, 30 Wash. 549, 71 Pac. 37, 94 Am. St. 889, 60 L. R. A. 947, the law (sale of goods in bulk) was sustained upon the theory that it was designed to prevent frauds among individuals. The court recognized in express words that there must be some abuse in the suppression of which the public is interested. In *Gundling v. Chicago*, 177 U. S. 183; *McLean v. Arkansas*, 211 U. S. 539, 546; *Powell v. Pennsylvania*, 127 U. S. 678; *Public Clearing House v. Coyne*, 194 U. S. 497; *State v. Wilson*, 61 Kan. 32, 58 Pac. 981, 47 L. R. A. 71, and *Patapsco Guano Co. v. North Carolina Board of Agriculture*, 171 U. S. 345, the public in each case had a direct and positive interest to protect the community from frauds and impositions in food products or from false weights and measures; for as was said in *State ex inf. Hadley v. Goffee*, 192 Mo. 670, 91 S. W. 486, without some protection, one who ships his grain to a public warehouse would be at the mercy of those who handle it and would, in the ordinary course of business, have no convenient or adequate means of verifying the classification and weight of his grain. It is upon these theories that the public warehouse and inspection laws are sustained. But this case does not fall within any of them. We cannot assume that an owner who ships and consigns his grain to himself needs any protection, or will be guilty of a fraud against himself. The design of the law is to protect an owner against the acts of third parties.

We therefore conclude (1) that the grain inspection law

is not broad enough to cover inspection of grain shipped by an owner to himself, there being nothing in the record to indicate that it is to be stored in a public warehouse; (2) that if it were so, a tax upon such shipment could not be sustained by reference to the police power.

Judgment affirmed.

RUDKIN, C. J., CROW, MOUNT, and DUNBAR, JJ., concur.