[No. 4121.  Decided December 30, 1902.]

JOHN H. McDANIELS, *Appellant*, v. J. J. CONNELLY
SHOE COMPANY *et al., Respondents.*

GARNISHMENT — ISSUES.

Where garnishees answer that they have no property of the
principal defendant, a controverting affidavit that they bought a
stock of goods in bulk from defendant under circumstances pro-
hibited by statute sufficiently raises an issue, under Bal. Code,
§ 5409, which provides that, if the plaintiff should not be satis-
fied with the answer of the garnishee, he may controvert the same
by affidavit in writing signed by him stating that he has good
reason to believe that the answer of the garnishee is incorrect,
and in what particular he believes it is incorrect.

CONSTITUTIONAL LAW — SALE OF GOODS IN BULK — RESTRICTIONS ON
RIGHT — DUE PROCESS.

The act of March 16, 1901 (Laws 1901, p. 222), to regulate the
purchase, sale ,transfer and incumbrance of stocks of goods, wares
or merchandise in bulk, and declaring same void under certain
circumstances, is a rightful exercise of legislative power, under
the police powers of the state, for the protection of the public and
the prevention of frauds among individuals, and hence not a vio-
lation of the constitutional prohibition against depriving persons
of their property without due process of law, on the ground of
restricting the rights of certain individuals to dispose of their
property.

SAME — CLASS LEGISLATION.

An act restricting retail merchants from transferring their
stocks of merchandise in bulk, without making provision for the
payment of creditors, is not class legislation within the meaning
of the constitution, merely because it does not apply to all owners
of property, so long as it applies alike to all persons in the class
engaged in retailing merchandise.

SAME — RESTRAINT OF TRADE.

Such an act is not in restraint of trade, since it does not pre-
vent the sale of stocks of goods in bulk, but merely restricts the
application of the proceeds, when stocks are sold in that manner.

Appeal from Superior Court, Pierce County.—Hon.
WILLIAM H. SNELL, Judge.  Reversed.

*Bates & Murray, Leopold M. Stern, F. S. Blattner, John H. McDaniels* and *Fenley Bryan,* for appellant.

*Ira A. Town, A. R. Titlow* and *F. M. Halsted,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—The appellant brought an action in the superior court of Pierce county against the J. J. Connelly Shoe Company, as defendant, to recover upon certain accounts for merchandise which had theretofore been assigned to him by the wholesale dealers who had sold the merchandise to the defendant. At the time of commencing the action the appellant sued out a writ of garnishment against the respondents A. J. Burchill and William Turner, averring in his affidavit for the writ, in the language of the statute, that he had reason to believe, and did believe, that the respondents were indebted to the defendant the J. J. Connelly Shoe Company, and that they had in their possession and under their control personal property and effects belonging to the defendant. The respondents answered separately to the writ, averring, in substance, that they were not indebted to, and did not have in their possession or under their control any personal property or effects of, the defendant. To these answers the appellant filed a controverting affidavit, in which he alleged that he had good reason to believe, and did believe, that the answers of the respondents were incorrect, particularly that part of the answers which averred that the respondents had no personal property or effects in their possession or under their control belonging to the defendant; further averring, in substance, that the defendant had theretofore been engaged in the retail boot and shoe business in the city of Tacoma, and had become indebted in large sums to various wholesale dealers, among whom

were the assignors of the appellant; that just prior to the commencement of the action the defendant had undertaken to sell to the respondents, and the respondents had undertaken to purchase of the defendant, its stock of goods in bulk; that the goods had been delivered, and the agreed purchase price paid, without a compliance with the provisions of the statute relating to the sale of stocks of goods in bulk, and was therefore fraudulent and void. The respondents thereupon moved for a discharge upon their answers, which motion the trial court granted, entering a judgment of dismissal of the garnishee action. This appeal is from that judgment.

The trial judge sustained the motion to dismiss on the ground that the act of the legislature of March 16, 1901, relied upon by the appellant, is unconstitutional and void; and it is to this question that the arguments are mainly directed. The respondents, however, insist that the controverting affidavits were insufficient to raise an issue, and that the judgment of dismissal should be sustained for that reason. But without following the argument in detail, we are satisfied that the affidavits were sufficient to raise the issue sought to be raised. The statute (§ 5409, Bal. Code) provides that, if the plaintiff should not be satisfied with the answer of the garnishee, he may controvert the same by affidavit in writing signed by him, stating that he has good reason to believe that the answer of the garnishee is incorrect; stating in what particulars he believes the same is incorrect. The affidavits controverting the answers of the respondents sufficiently complied with the statute in this respect. They not only stated that the appellant had good reason to believe, and did believe, that the answers were incorrect in the particular wherein it was averred that the respondents had no property or effects in their possession or under their

control belonging to the defendant, J. J. Connelly Shoe Company, but the grounds upon which that belief was based were detailed at length, namely, facts were alleged tending to show that the respondents had taken into their possession and attempted to acquire title to a stock of goods belonging to the defendant under circumstances prohibited by statute.

The further question involves the constitutionality of the act of March 16, 1901 (Laws 1901, p. 222; Pierce, Code, § 5346 *et seq.*). The first section of this act makes it the duty of every person who shall bargain for or purchase any stock of goods in bulk, for cash or on credit, before paying the vendor any part of the purchase price thereof, to demand of and receive from the vendor a written statement showing the names and addresses of all of the creditors of the vendor, together with the amount of such indebtedness, whether due or to become due, owing to each of such creditors, verified according to a form set out in the statute. The second section makes "fraudulent and void" any sale of a stock of goods in bulk unless the vendee demands and receives from the vendor the statement mentioned in the first section, verified as therein provided, "and without paying, or seeing to it that the purchase money of said property, is applied to the payment of the *bona fide* claim of creditors of the vendor as shown upon such verified statement, share and share alike." The third section makes it perjury on the part of a vendor to make and deliver a statement which does not include all of the creditors of the vendor, with the correct amounts owing to each of them, or which contains any false or untrue statement, and provides a punishment for the same. The fourth section declares that any sale or transfer of a stock of goods out of the usual

or ordinary course of business or trade of the vendor or whenever substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed, or whenever an interest in or to the business or trade shall be sold or conveyed, or attempted to be sold or conveyed, shall be a sale in bulk, in contemplation of the act; followed by a proviso to the effect that, if the vendor shall produce and deliver a written waiver of the provisions of the act, then this section shall not apply. The fifth and last section provides that nothing in the act contained shall apply to sales by executors, administrators, or receivers, or to sales made by any public officer acting under judicial process.

The first objection to the constitutionality of the act is that it deprives persons of their property without due process of law. As we understand the argument, the contention is not that the act deprives an owner of property of his day in court, where his property rights are judicially called in question, or that it in any manner authorizes the actual physical taking by one of the property of another, but it is that as the term "property," in legal signification, includes in its meaning the right of any person to possess, use, enjoy, or dispose of a thing, the act violates the constitution, inasmuch as it restricts the right of an owner to dispose of his property. The act, it is true, does prohibit owners of certain kinds of property from disposing of it in a particular way, without complying with certain conditions, but it is not for that reason necessarily unconstitutional. While the legislature may not constitutionally declare that void which in its nature is, and under all circumstances must be, entirely honest and harmless, yet it may, under its police powers, place such reasonable restrictions on the right of an owner in relation to his prop-

erty as it finds necessary to protect the interests of the public, or prevent frauds among individuals. If this were not so, it would be easy to find many unconstitutional acts on the statute books. Statutes familiar to every person, such as those regulating the manner of conveying real property, regulating the mortgaging and sale of personal property, requiring certain articles of food made in imitation of other well known articles to be branded with their true names, regulating the sale of poisons, and the like, are statutes restricting the rights of an owner in relation to his property, yet such statutes, in so far as they tend reasonably to prevent injury to the public, and frauds among individuals, are uniformly held constitutional. Turning to the act before us, its purpose is plain. It was intended to prevent retail dealers in goods, wares, and merchandise from defrauding their creditors. As such, it is among the undoubted subjects of legislation; and the real question to be considered, therefore, is, is the act so far an abuse of the power of legislation as to take it out of the rule of due process of law? In our opinion, it is not. It is a general rule that, when the business is a proper subject of police regulation, the legislature may, in the exercise of that power, adopt such measures as they see fit to correct the existing abuses, so long as the measures adopted have relation to and a tendency to accomplish the desired end, and violate no direct constitutional provision. This act is within the rule. That it has relation to and will tend to prevent the particular frauds aimed at, cannot be doubted. Nor is there any direct constitutional provision against the enactment of such laws. Whether the act is more harsh than was necessary, or whether it is not the wisest or best that could have been adopted, are legislative questions, with which the courts have nothing to do. It is enough for

the court to know that the act is within the legislative power.

It is next said that the act violates that provision of the constitution which prohibits the legislature from granting to a class of citizens privileges and immunities which upon the same terms shall not equally belong to all citizens; in other words, it is class legislation. In *Redford v. Spokane St. Ry. Co.*, 15 Wash. 419 (46 Pac. 650), we held that, where a law is uniform so far as it operates, its constitutionality is not affected by the number of persons within the scope of its operation; and, applying this principle, we held in *Fitch v. Applegate*, 24 Wash. 25 (64 Pac. 147), that a law giving laborers in certain enumerated industries liens upon the general property of their employers was constitutional. The same principle is applicable to the case in hand. It is true that the mere fact of classification is insufficient to relieve a statute from the reach of this clause of the constitution,—that it must appear that the classification is made upon some reasonable and just difference between the persons affected and others, to warrant classification at all; but, applying this test, the act is sufficient. The reason is found in the nature of the business itself. It is well known that the business of retailing goods, wares, and merchandise is conducted largely upon credit, and furnishes an opportunity for the commission of frauds upon creditors not usual in other classes of business. In fact, charges of fraud made against retail dealers who have sold their stocks in bulk are among the most common with which the courts are called upon to deal. Legislation, therefore, which restricts the absolute right of persons engaged in such business to transfer their property, so long as it applies alike to all persons engaged therein, is not class legislation, within the meaning of the con-

stitution, merely because it does not apply to all owners of property. Nor is the act in restraint of trade. It prevents no one from dealing in the usual and ordinary course, nor does it prevent the selling of stocks of goods in bulk. It restricts only the application of the proceeds when stocks are sold in the latter manner. It may be that, because of this, sales in this manner will not be so readily made as formerly; but, if this be so, it is only another case where private desires must yield to the public good, and not one of unconstitutional enactment.

As to the particular provisions of the act, there is, indeed, much that may be criticised, and doubtless certain of its provisions will require construction when attempt is made to work it out in detail. But the former are not so gross as to authorize the courts to declare the law a nullity, and the latter can best be determined when the questions actually arise.

The judgment of the trial court is reversed, and the cause is remanded, with instructions to proceed with a hearing upon the merits.

REAVIS, C. J., and DUNBAR, ANDERS and MOUNT, JJ., concur.