[No. 4996.    Decided July 12, 1904.]

THE STATE OF WASHINGTON, *Appellant*, v. THE FRATERNAL KNIGHTS AND LADIES, *Respondent*.[1]

STATUTES — TITLE — BENEFICIAL ASSOCIATIONS — REGULATION — PRESCRIBING MINIMUM RATE. Laws 1901, p. 356, entitled "An act regulating fraternal beneficiary societies," does not violate the constitutional prohibition against a bill's embracing more than one subject, by reason of the inclusion of § 12, p. 362, which fixes a minimum rate for insurance by all such associations thereafter authorized to transact business in this state, since "regulation" is broad enough to include said section.

BENEFICIAL ASSOCIATIONS — STATUTES — CONSTRUCTION — CERTAINTY—REFERENCE TO MORTALITY TABLE—MINIMUM RATE. The act of 1901, p. 356, regulating beneficial societies by fixing a rate for assessments not lower than as indicated by the table designated "Fraternal Congress Mortality Table," is not objectionable as vague and uncertain, nor because the same belongs to the domain of evidence and ought to be subject to impeachment, since it is competent for the legislature to determine the rate by adopting such tables and incorporating them into the law.

SAME—CONSTITUTIONAL LAW—CLASS LEGISLATION—EQUAL PROTECTION—REGULATIONS APPLYING TO NEW CORPORATIONS. Laws 1901, p. 356, regulating new corporations to be thereafter authorized to do business in this state, and making them a class unto themselves, does not violate the constitution, art. 1, § 12, forbidding the granting of special privileges to any citizen or class; nor does it violate art. 12, § 7, providing that no corporation outside the limits of the state shall be allowed to transact business on more favorable conditions than those prescribed for

[1]Reported in 77 Pac. 500.

domestic corporations, where the law applies equally to all for-
eign and domestic corporations thereafter to be authorized to
transact business, since it is only necessary that the laws operate
alike upon all similarly situated.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered October 8, 1903, dismissing
the action, upon sustaining a demurrer to the complaint.
Reversed.

*The Attorney General* and *E. W. Ross, C. C. Dalton,*
and *Root, Palmer & Brown,* for appellant.

*J. W. Langley, W. H. Merritt,* and *Robert D. Hamlin,*
for respondent.

HADLEY, J.—The state of Washington, the appellant
in this appeal, instituted this proceeding against the re-
spondent to enjoin and prohibit it from continuing or
carrying on the business of fraternal insurance, until
certain alleged violations of law have been corrected.
The complaint avers, that the respondent is a fraternal
beneficiary corporation, organized and existing under and
by virtue of chapter 174, of the session laws of 1901; that
the corporation was organized on the 16th day of April,
1903, and ever since said date has been, and now is, trans-
acting a fraternal beneficiary business, and issuing to
its beneficiary members certificates entitling their bene-
ficiaries to payment in the event of death of the member,
or in case of sickness or accident, of the sums set forth
in a table or schedule, such payments being in considera-
tion of the monthly payment of installments or assess-
ments in sums set forth in the same table; that the mortu-
ary assessment rates, heretofore charged and collected,
and now being charged and collected, by said corporation,
have been, at all times since the organization of the com-

pany, and are now, less than the mortuary assessment rates indicated as necessary by the fraternal congress mortality table set forth in said chapter 174 of the laws of Washington, 1901, and less than the mortuary rates required by law; that said corporation ever since its organization has been, and now is, transacting and carrying on business in violation of § 12 of said chapter 174; that the commissioner of insurance of the state of Washington has repeatedly demanded of said corporation, its officers and agents, that the mortuary assessment rates charged and collected by it be increased and made to correspond with the rates indicated as necessary by said fraternal congress mortality table, and as required by law, but that it has refused, and still refuses, to increase said rates, or to comply with the requirements of law; that the said commissioner of insurance has served upon the attorney general notice in writing that said corporation has been, and is, exceeding its powers, is conducting its business fraudulently, has failed and refused to comply with the law, and that this proceeding is prosecuted at the request of said commissioner of insurance.  The complaint prays that the corporation be enjoined from continuing its business until the said violation shall have been corrected, and the costs of this action paid.  The corporation demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.  The demurrer was sustained.  The state elected to stand upon its complaint, and judgment was entered that the injunction be denied and the action dismissed. The state has appealed.

Respondent concedes that chapter 174, Laws 1901, is a complete act for all the purposes expressed in its title, without § 12 of the act, but contends that said section is

repugnant to § 19, art. 2, of the state constitution, which is as follows: "No bill shall embrace more than one subject, and that shall be embraced in the title." The title of the act of 1901 is as follows: "An act regulating fraternal beneficiary societies, orders, or associations." Section 12 of the act, which it is claimed is not within the above title is as follows:

"No association not admitted to transact business within this state prior to the passage of this act shall be incorporated or given a permit or certificate of authority to transact business within this state, as provided for by this act, unless it shall first show that the mortuary assessment rates, provided for in whatever plan of business it has adopted, are not lower than is indicated as necessary by the following mortality table:" (Here follows a table designated as "Fraternal Congress Mortality Table."

Respondent's argument is that this objection would be less forcible, if the minimum rate and the manner of determining it, provided by § 12, applied alike to all associations doing business in this state; but that, inasmuch as the section attempts to apply the rate to a class not yet in existence, and exempts from its operation all associations already doing business in the state, the matter of fixing a minimum rate for the only members the act can affect becomes a material part, if not the sole purpose, of the act itself, and is not sufficiently indicated by its title. If it is competent for the legislature to make the classification required by § 12, then we think the title of the act is broad enough to include it, for the reason that the words "regulating fraternal beneficiary societies," etc., seem broad enough to require the reader to examine the body of the act for every feature that may properly come within the scope of regulation.

The adoption of minimum mortuary assessment rates, and their application under stated conditions, are matters of regulation, and come within the title of the act. Whether it is competent for the legislature to regulate by classification we shall hereinafter discuss.

Respondent's next contention is that § 12 aforesaid is vague and uncertain, in that it is alleged no minimum mortuary assessment rate is in fact written in the law itself as the legislative judgment and will. It is true it is designated as, "Fraternal Congress Mortality Table," but the section so refers to the table that its terms become a part of the act itself, and it is wholly immaterial by whom it was prepared or by what, if any, name it is designated. It may be true, as respondent argues, that the table was originally prepared by some body of men bearing no official relation to the legislative body, but that does not prevent the legislature from adopting the table, and incorporating it into law as a regulative feature. It is further argued that such tables belong to the domain of evidence, and that, like other evidentiary matters, they should receive the scrutiny of the courts, and be held subject to impeachment. We think, in the light of modern experience, that it is entirely competent for the legislature to incorporate such tables into law, and require that they shall be applied. It may be a matter of difference of opinion as to whether the table includes the rates most approved by experience, but that is a question which the legislature may determine, and it is not necessarily one of evidence to be weighed by the courts.

Respondent's principal contention, however, is that § 12 attempts to make an arbitrary and unreasonable classification of corporations, with reference to the application of assessment rates, and grants unequal privileges and

immunities in violation of § 12, art. 1, of the state constitution, which is as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

It is insisted that, inasmuch as the law of 1901 exempts corporations then existing and doing business from the operation of the rates named in the act, but applies them to corporations thereafter created or admitted to do business, there is for that reason an attempted discrimination which is violative of the above constitutional requirement. It will be observed, however, that all corporations thereafter created or admitted to do business are placed in a class to themselves, and no discrimination is made between any of the class, but the law is operative alike upon all corporations similarly situated. It is further suggested that, inasmuch as foreign corporations which had been admitted to transact business within this state prior to the passage of the act are exempt from the application of the statutory assessment rates, the fact that the rates are made to apply to respondent, a domestic corporation, is violative of § 7, art. 12, of the state constitution, which is as follows:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

It will also be observed, in this connection, that all foreign corporations, thereafter admitted to do business in this state, are classified with such as respondent, and no more favorable conditions are extended to the one than to the other. Thus all corporations, whether domestic or foreign, which are admitted to do business in the state after the passage of this law, are placed upon equal footing. What

may have been the legislative reasoning may be surmised. Doubtless it was believed that experience had shown that assessment rates lower than those incorporated in the act were insufficient to secure payment of benefits and insurance to beneficiaries. It may have also been the view that certain contractual relations as to assessment rates then obtained between certificate holders and existing corporations, which prevented the application of the new rates to old members. It may have been believed to be impracticable for existing corporations to carry two sets of rates, one for old and another for new certificate holders. It may be supposed that the legislature, actuated by such reasoning, decided to arrange the associations in two classes as aforesaid, and that, by so doing, it would the more effectively correct what it must have believed to be a prevailing evil, viz., the charging and acceptance of mortuary assessment rates too low to secure payments to the beneficiaries of trusting, but uninformed and inexperienced, certificate holders. It must be assumed that it was the object of the legislature to establish such regulative conditions as will best serve and protect the rights of the citizen. Based upon such grounds as above indicated, the classification seems to be neither unreasonable nor arbitrary, and such reasonable classifications are held to be not violative of the constitutional principles invoked here, where all persons who come within the operation of the law are affected alike, even though they may constitute a class. Equal protection of the laws, given by the constitution, requires that the law shall have equality of operation, but that does not mean equality of operation on persons merely as such, but on persons according to their relations, *State v. Carey,* 4 Wash. 424, 30 Pac. 729; *Redford v. Spokane St. R. Co.,* 15 Wash. 419, 46 Pac. 650; *Fitch v. Applegate,* 24 Wash. 25, 64 Pac. 147; *State v. Nichols,* 28 Wash. 628, 69 Pac.

372; *State v. Clark,* 30 Wash. 439, 71 Pac. 20; *McDaniels v. Connelly Shoe Co.,* 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. 889; *People v. Phippin,* 70 Mich. 6, 37 N. W. 888; *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Ames v. Union Pac. R. Co.,* 64 Fed. 165; *Chicago etc. R. Co. v. Iowa,* 94 U. S. 155, 24 L. Ed. 94; *Missouri Pac. R. Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Indianapolis v. Navin,* 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Central Iowa R. Co. v. Board of Supervisors,* 67 Iowa 199, 25 N. W. 128; *In re Oberg,* 21 Ore. 406, 28 Pac. 130, 14 L. R. A. 577; *Ex parte Koser,* 60 Cal. 177; *Hayes v. Missouri,* 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578; *American Sugar Ref. Co. v. Louisiana,* 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102; *New York etc. R. Co. v. New York,* 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; *Fidelity Mut. Life Ass'n v. Mettler,* 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922.

The principle under discussion here has been so frequently held, not only in the above cited cases, but in many others, that we deem it unnecessary to further pursue the subject. The act of 1901 operates alike upon respondent, and upon all other corporations similarly situated. Such legislative classification is not in conflict with the constitution. No acquired rights or privileges have been taken from respondent. Its existence followed that of the law, and its incorporators were bound to know its limitations, in the light of existing law. We think the complaint states a cause of action.

The judgment is reversed, and the cause remanded, with instructions to the lower court to overrule the demurrer to the complaint.

FULLERTON, C. J., and ANDERS, MOUNT, and DUNBAR, JJ., concur.