[Nos. 7670, 7699, 7698, 7700. Decided October 13, 1908.]

THE STATE OF WASHINGTON, *on the Relation of W. W. Zent,*
*Plaintiff,* v. SAM H. NICHOLS, *as Secretary of State,*
O. R. Holcomb *et al., Respondents.*[1]

THE STATE OF WASHINGTON, *on the Relation of E. K.*
*Pendergast, Plaintiff,* v. SAM H. NICHOLS, *as*
*Secretary of State, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of C. E. Coon,*
*Plaintiff,* v. SAM H. NICHOLS, *as Secretary of*
*State, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of W. H. White,*
*Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY
*et al, Respondents.*

STATUTES—TITLES AND SUBJECTS—SUFFICIENCY. As the title of an act need not be a complete index of its contents, and is sufficient if comprehensive enough to call attention to the subject-matter, the title to the direct primary law, Laws 1907, p. 457, being "an act relating to, regulating and providing for the nomination of candidates for public office in the state of Washington, and providing penalties for the violation thereof," is sufficient to include provisions relating to the filing of itemized statements of the candidate's expenditures, provisions for the nomination of candidates for Congress and the United States Senate, provisions relating to fees to be paid by the candidates, and provisions as to who shall be considered nominees and entitled to have their names appear on the ballots to be used at the general election, the selection of candidates for which was the sole purpose of the primary election; since they all legitimately relate to, regulate and provide for nominations of candidates for public office in the state of Washington.

ELECTIONS—NOMINATIONS—PRIMARY ELECTION—FILING STATEMENT OF EXPENSES—TIME FOR—INDEFINITENESS. Where a primary election law is indefinite as to the time within which candidates shall file a list of their expenditures, they must file the same within a reasonable time.

ELECTIONS — CONGRESSIONAL NOMINATIONS — STATE LEGISLATURE. The nomination of candidates for the house of representatives in Congress is a matter for state regulation.

[1]Reported in 97 Pac. 728.

ELECTIONS—PRIMARY NOMINATIONS—REQUIREMENT OF FEE FROM
CANDIDATES—VALIDITY. The provisions in the primary election law
requiring candidates for public office to pay a fee for the privilege of
running for office is valid, as those seeking the benefit of a proceed-
ing may be required to reimburse the state in carrying the same
into effect.

STATUTES—AMENDMENT BY REFERENCE TO TITLE. The primary
election law does not violate Const. art 11, § 37, which provides that·
no act shall ever be revised or amended by mere reference to its
title but that the act must be set forth in full; since the constitu-
tion was not intended to prevent the enactment of statutes complete
in themselves which repeal or amend existing statutes, without
setting forth the repealed statutes.

SAME. A reference to a former statute to the effect that in cer-
tain instances the same shall not be affected by the terms of the ·
new law superseding and limiting former statutes on the subject, is
not an amending or revising of an act by mere reference to its title,
when the new law is a· complete act within itself.

ELECTIONS—NOMINATIONS—PRIMARY ELECTIONS — QUALIFICATIONS
OF ELECTORS. The constitutional qualifications for electors at a gen-
eral election have no application to primary elections for the nomi-
nation of candidates for public office.

SAME—CHALLENGE OF ELECTOR—OATH. The provision of the pri-
mary election law, requiring any elector who may be challenged to
make oath or affirmation that he intends to affiliate with the party
whose ballot he demands, is a reasonable provision to protect the
integrity of political parties, and constitutional.

CONSTITUTIONAL LAW—COURTS—POLITICAL QUESTIONS. That a pri-
mary election law tends to destroy political parties, which are of
general utility and necessity, is a political rather than a judicial
question, which cannot be urged upon the courts as affecting the
constitutionality of the law.

ELECTIONS—NOMINATIONS—PRIMARY ELECTIONS— DECLARATION OF
CANDIDACY—VACANCIES—.FAILURE TO SPECIFY TERM. Under the pri-
mary election law, Laws 1907, p. 457, § 2, providing that the act shall
not apply to special elections for filling vacancies, and § 38 providing
that where there is a vacancy in the office of judge, candidates may
announce themselves for either the long or short term, a declaration
of candidacy for the office of judge in a district in which there was
a vacancy which does not specify any term, must be held to be a
candidacy for the regular or long term only.

SAME—EXCLUSIVENESS OF NOMINATIONS—JUDGES—STATE OFFICERS.
The primary election law, Laws 1907, p. 476, § 38, providing that the
judges of the supreme and superior courts shall be considered state

officers within the meaning of the act, which act'provides for the nomination of candidates for all state elective offices, supersedes all other forms of nomination, and a candidate for judge of the superior court nominated by a petition or certificate of electors under Bal. Code, §§ 1350 and 1352, is not entitled to have his name appear on the official ballot.

SAME. The legislature may provide that only the names of candidates nominated at the primary election in the manner specified shall appear on the official ballot, since the electors have the privilege of writing or pasting thereon the name of any candidate for whom they desire to vote.

SAME—REQUISITE PERCENTAGE OF VOTES CAST—PERSONS ENTITLED —SECOND CHOICE VOTES. Where there are four candidates for an office, a candidate receiving less than forty per centum of the first choice votes cannot claim to be the nominee at a primary election, when the law expressly declares that such a candidate shall not be a nominee; and he therefore is not in a position to complain of the unconstitutionality of a provision relating to second choice votes.

SAME—FIRST AND SECOND CHOICE VOTES—REASONABLENESS OF PROVISIONS. The legislature has power to provide that where there are four candidates for an office, a candidate receiving less than forty per centum of his party vote shall not be deemed its nominee, and that in such case the candidate receiving the highest number of first and second choice votes shall be the nominee; since there is no interference with the freedom of the elector in casting his first choice ballot, and the provision is a reasonable method of determining the nominees in case there is no party nomination by first choice votes alone.

Original applications filed in the supreme court, October 3d and 5th, 1908, for writs of prohibition or mandamus to the secretary of state. Also, application for a writ of certiorari on behalf of the relator White, to review a judgment of the superior court for King county, Rice, J., entered October 5, 1908, upon sustaining a demurrer to the petition, dismissing an application for a writ of mandamus to the county auditor. Writs denied.

*McBurney & Cummings*, for relators Zent and White, and *W. H. White pro se.* The act of 1907 is not a complete enactment in itself, and attempts to revise and amend existing statutes expressly referred to without setting forth the stat-

utes amended at full length as required by Const. art. 2, § 37. *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769; *In re Buelow,* 98 Fed. 86; *In re Dietrick,* 32 Wash. 471, 73 Pac. 506. The law is void as embracing more than one subject and that not expressed in its title, in that it makes it a misdemeanor for a candidate not to file a list of expenses. *Spier v. Baker,* 120 Cal. 370, 52 Pac. 659. Also, in that the provisions relating to candidates for the United States Senate and Congress do not relate to "public officers in the State of Washington." Laws 1907, ch. 209, §§ 2, 5, 7, 10, 24, 36, and 37; *Percival v. Cowychee & Wide Hollow Irr. Dist.,* 15. Wash. 480, 46 Pac. 1035; *State v. Winsor,* 50 Wash. 407, 97 Pac. 446. The subject-matter of the act is not mentioned in or germane to the title "nomination of officers". *Harland v. Territory,* 3 Wash. Terr. 131, 13 Pac. 453; *State v. Halbert,* 14 Wash. 306, 44 Pac. 538; *Percival v. Cowychee & Wide Hollow Irr. Dist., supra; Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522; *Armour & Co. v. Western Const. Co.,* 36 Wash. 529, 78 Pac. 1106; *State ex rel. Henry v. Macdonald,* 25 Wash. 122, 64 Pac. 912; *State ex rel. Nettleton v. Case,* 39 Wash. 177, 81 Pac. 554, 109 Am. St. 874, 1 L. R. A. (N. S.) 152; *Spier v. Baker,* 120 Cal. 370, 52 Pac. 659. The act applies only to the convention method of organized parties, and does not repeal former enactments respecting nominations by petition and certificate. *Meade v. French,* 4 Wash. 11, 29 Pac. 833; *Pierce v. Commercial Inv. Co.,* 30 Wash. 272, 70 Pac. 496; *State ex rel. Purves v. Moyer,* 17 Wash. 643, 50 Pac. 492; *Leavenworth v. Billings,* 26 Wash. 1, 66 Pac. 107; *Callvert v. Winsor,* 26 Wash. 368, 67 Pac. 91; *Debenture Corp. of London v. Warren,* 9 Wash. 312, 37 Pac. 451. The law tends to disrupt political parties, and therefore violates Const. art. 1, §§ 1 and 4, declaring political power to be inherent in the people, and assuring the right of petition and to peaceably assemble; the legislature has no power to prescribe an exclusive method of nomination by political parties. 2 Bryce, Am. Com. p. 44, ch. 59; p. 57,

ch. 60; *Ladd v. Holmes*, 40 Ore. 167, 66 Pac. 714; *Britton v. Board of Election Com'rs*, 129 Cal 337, 61 Pac. 1115, 51 L. R. A. 115; *Whipple v. Broad*, 25 Colo. 407, 55 Pac. 172; Cooley, Const. Lim. p. 174; *Calder v. Bull*, 3 Dallas 386, 1 L. Ed. 648. The legislature has no power to prescribe the qualifications for membership in political parties. *Spier v. Baker*, and *Britton v. Board of Election Com'rs, supra.* It cannot be contended that this is not an election. *Ladd v. Holmes* and *Britton v. Board of Election Com'rs, supra; Murphy v. Curry*, 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97; *State ex rel. Rinder v. Goff*, 129 Wis. 668, 109 N. W. 628, 9 L. R. A. (N. S.) 916. If it be an election, within the constitution, an attempt on the part of the legislature to provide additional qualifications is void. *Spier v. Baker, supra.* The law is void as violating the secrecy of the ballot. Const. art. 6, § 6. The law being void in part, and the remaining portions failing to constitute a complete uniform act, such as, standing without the void portions, it can reasonably be said the legislature would have enacted, the whole is void. *State ex rel. Latimer v. Henry*, 28 Wash. 38, 68 Pac. 368; *Nathan v. Spokane County,* 35 Wash. 26, 76 Pac. 621, 102 Am. St. 885, 65 L. R. A. 336; *State v. Winsor, supra.*

*Troy & Sturdevant* and *E. K. Pendergast*, for relator Pendergast. It was not intended to repeal the prior laws respecting nominations other than by political parties. *Ervay v. Hill*, 46 Wash. 457, 90 Pac. 590; *State ex rel. Birchmore v. Board* (S. C.), 59 S. E. 145, 14 L. R. A. (N. S.) 850; *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522. In case of doubt between two constructions, the court should adopt that which will afford the citizen the greater liberty in casting his ballot. Const. art 2, § 37; *People ex rel. Eaton v. District Court*, 18 Colo. 26, 31 Pac. 339; *Phelps v. Piper*, 48 Neb. 724, 67 N. W. 755, 33 L. R. A. 53. The act violates Const., art. 1, § 19, requiring that all elections shall be free and equal and that the free exercise of suffrage be not interfered with. *Ballinger v. McLauchlin* (S. D.), 116 N. W. 70;

*Johnson v. Grand Forks County* (N. D.), 113 N. W. 1071; *State ex rel. Nettleton v. Case,* 39 Wash. 177, 81 Pac. 554, 109 Am. St. 874, 1 L. R. A. (N. S.) 152; *Ladd v. Holmes,* 40 Ore. 167, 66 Pac. 714, 91 Am. St. 457. A candidate who is deprived of his right to have his name placed on the ballot is deprived of the equal protection of the laws. *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, 9 L. R. A. (N. S.) 916; *Murphy v. Curry,* 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97. The privacy under section 2 of the primary law is void. *Skagit County v. Stiles,* 10 Wash. 388, 39 Pac. 116; *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216; *Nathan v. Spokane County,* 35 Wash. 26, 76 Pac. 521. The proviso in section 4, and the proviso in section 8 are void as being an arbitrary legislative interference with the rights of candidates for public office and of political parties to nominate partisan candidates for the judiciary. *Marsh v. Hanly,* 111 Cal. 368, 43 Pac. 975; *Spier v. Baker,* 120 Cal. 370, 52 Pac. 659, 41 L. R. A. 96; *Britton v. Board of Election Com'rs,* 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115.

*Harry Ballinger, P. C. Sullivan,* and *Gordon Mackay,* for relator Coon. The provisions relating to second choice votes are unconstitutional. *Spier v. Baker,* 120 Cal. 370, 52 Pac. 659, 41 L. R. A. 196; *People v. Board of Election Com'rs,* 221 Ill. 9, 77 N. E. 321; *Johnson v. Grank Forks County* (N. D.), 113 N. W. 1071; *Leonard v. Commonwealth,* 112 Pa. St. 607, 4 Atl. 220; *State ex rel. McCarthy v. Moore,* 87 Minn. 308, 92 N. W. 4, 94 Am. St. 702, 59 L. R. A. 447; *State v. Constantine,* 42 Ohio St. 437, 51 Am. Rep. 833; *Robinson v. Robinson,* 21 R. I. 81, 41 Atl. 1009; *McArdle v. New Jersey,* 66 N. J. L. 590, 49 Atl. 1013, 88 Am. St. 496; *Smith v. Perth Amboy,* 70 N. J. L. 194, 56 Atl. 145; *People ex rel. Longenecker v. Nelson,* 133 Ill. 565, 27 N. E. 217.

*The Attorney General* and *William W. Manier, Assistant,* for respondents. The relators have no legal capacity to sue.

*Mackay v. Dever,* 49 Wash. 439, 95 Pac. 860. The person who contests an election must show either that the illegal votes which were cast changed the result of the election, or that those electors who were prevented from voting would have cast their votes in such a manner as to have changed the result. *Scholl v. Bell,* 31 Ky. Law 335, 102 S. W. 248; .*O'Neal v. Minary,* 30 Ky. Law 888, 101 S. W. 951. The legislature has broad powers in the regulation and control of political organizations and nominations of candidates for public office, subject only to the express restriction or limitation imposed by the Federal and State Constitutions. *De-Walt v. Bartley,* 146 Pa. St. 529, 24 Atl. 529, 28 Am. St. 814, 15 L. R. A. 771; *Ladd v. Holmes,* 40 Ore. 167, 66 Pac. 714, 91 Am. St. 457; *State ex rel. McCarthy v. Moore,* 87 Minn. 308, 92 N. W. 4, 94 Am. St. 702, 59 L. R. A. 447; *State ex rel. Labauve v. Michel* (La.), 46 South. 430. The primary election law, being highly remedial in its character, should be liberally construed. *State ex rel. Maring v. Swanger* (Mo.), 111 S. W. 7. This court is very reluctant to declare laws unconstitutional and will resolve every doubt in favor of the constitutionality of the act. *Board of Directors of Middle Kittitas Irr. Dist. v. Peterson,* 4 Wash. 147, 29 Pac. 995; *State ex rel. School District v. Grimes,* 7 Wash. 270, 34 Pac. 836; *Townsend Gas & Elec. Light Co. v. Hill,* 24 Wash. 469, 64 Pac. 778. If the portion of the primary election law relating to the nomination of the nonpartisan judiciary is unconstitutional, the remainder of the act would still be complete within itself, and would stand. *State ex rel. Moodie v Bryan,* 50 Fla. 293, 39 South. 929; *State ex rel. Adair v. Drexel* (Neb.), 105 N. W. 174; *De France v. Harmer,* 66 Neb. 14, 92 N. W. 159; *State ex rel. Latimer v. Henry,* 28 Wash. 38, 68 Pac. 368; *In re O'Neill,* 41 Wash. 174, 83 Pac. 104, 3 L. R. A. (N. S.) 558. It was the intention to supersede prior laws. *Northern Pac. R. Co. v. Haas,* 2 Wash. 376, 26 Pac. 869; *Stetson & Post Mill Co. v. Brown,* 21 Wash. 619, 59 Pac. 507, 75 Am. St. 862. Where a new

law covers the whole subject-matter of an old one, the former law is repealed by implication, though there may be some matters in the old law which are not necessarily obnoxious to any provisions in the new one. *Mansfield v. First Nat. Bank,* 5 Wash. 665, 32 Pac. 789, 999; *Germond v. Tacoma,* 6 Wash. 365, 33 Pac. 961. A repeal of a statute by implication is not governed by section 19, article 2 of the Constitution, requiring the subject of the act to be expressed in its title. *Coleman v. Cravens,* 41 Wash. 1, 82 Pac. 1005; *State v. Bergfeldt,* 41 Wash. 234, 83 Pac. 177.

*Vance & Mitchell, Routhe & Hinman,* and *C. L. Holcomb,* for respondent O. R. Holcomb. The law is constitutional. *Ladd v. Holmes,* 40 Ore. 167, 66 Pac. 714, 91 Am. St. 457; *Chamberlain v. Wood,* 15 S. D. 216, 88 N. W. 109, 91 Am. St. 674, 56 L. R. A. 187; *Commonwealth v. Reeder,* 171 Pa. St. 505, 33 Atl. 67, 33 L. R. A. 141; *Kenneweg v. Allegany County Com'rs,* 102 Md. 119, 62 Atl. 249; *State ex rel. Brooks v. Fransham,* 19 Mont. 273, 48 Pac. 1; *State ex rel. Adair v. Drexel* (Neb.), 105 N. W. 174. Statutes regulating the printing of official ballots are constitutional. *Ransom v. Black,* 54 N. J. L. 446, 24 Atl. 489, 1021; *Ladd v. Holmes, supra; DeWalt v. Bartley,* 146 Pa. St. 529, 24 Atl. 529, 28 Am. St. 814, 15 L. R. A. 771. The right to vote for a candidate of the voter's choice is preserved by provisions for writing or "pasters". *Patterson v. Hanley,* 136 Cal. 265, 68 Pac. 821; *Coughlin v. McElroy,* 78 Conn. 99, 43 Atl. 854, 77 Am. St. 301; *Fletcher v. Wall,* 172 Ill. 426, 50 N. E. 230, 40 L. R. A. 617; *Voorhees v. Arnold,* 108 Iowa 77, 78 N. W. 795; *People ex rel. Oatman v. Fox,* 114 Mich. 652, 72 N. W. 611; *Price v. Lush,* 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467; *Bowers v. Smith,* 111 Mo. 45, 20 S. W. 101, 33 Am. St. 491, 16 L. R. A. 754; *State ex rel. Crow v. Hostetter,* 137 Mo. 636, 39 S. W. 270, 59 Am. St. 515, 38 L. R. A. 208; *People ex rel. Goring v. President etc. of Wappinger's Falls,* 144 N. Y. 616, 39 N. E. 641; *Howser v. Pepper,* 8 N. D. 484,

79 N. W. 1018; *Morris v. Board of Canvassers,* 49 W. Va. 251, 38 S. E. 500; *Cole v. Tucker,* 164 Mass. 486, 41 N. E. 681, 29 L. R. A. 668; *People ex rel. Bradley v. Shaw,* 133 N. Y. 493, 31 N. E. 512, 16 L. R. A. 606; *State ex rel. Attorney General v. Dillon,* 32 Fla. 545, 14 South. 383, 22 L. R. A. 124; *Miner v. Olin,* 159 Mass. 487, 34 N. E. 721; *Healey v. Wipf* (S. D.), 117 N. W. 521; *Morrow v. Wipf* (S. D.), 115 N. W. 1121; *Katz v. Fitzgerald* (Cal.), 93 Pac. 112; *Schostag v. Cator* (Cal.), 91 Pac. 502; *Ransom v. Black,* 54 N. J. L. 446, 24 Atl. 489; *DeWalt v. Bartley, supra; Slaymaker v. Phillips,* 5 Wyo. 453, 40 Pac. 971, 42 Pac. 1049, 47 L. R. A. 842; *State ex rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, 9 L. R. A. (N. S.), 916; McCrary, Elections, 699-700; Paine, Elections, 699-707; 10 Am. & Eng. Ency. Law (2d ed.), 587. The duty of the canvassing board to declare the result is absolute. *State ex rel. Harvey v. Mason,* 45 Wash. 234, 88 Pac. 126; *State ex rel. King v. Trimbell,* 12 Wash. 440, 41 Pac. 183. As to the terms of judicial offices, see *State ex rel. Dyer v. Twichell,* 4 Wash. 715, 31 Pac. 19; *State ex rel. Linn v. Millett,* 20 Wash. 221, 54 Pac. 1124; *State ex rel. Murphy v. McBride,* 29 Wash. 335, 70 Pac. 25. There is a distinction between vacancies in the term of one holding the office, and vacancies in the office. Paine, Elections, pp. 211-220; *State v. Black,* 22 Minn. 336. In the absence of any declaration to the contrary, the regular term of office as fixed by law would be presumed to be intended. *State ex rel. Dyer v. Twichell, supra.* The title to the act fully sets forth the subject of the legislation. *State ex rel. Griffith v. Newland,* 37 Wash. 428, 79 Pac. 983; *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520; *Baker v. Prewett,* 3 Wash. Terr. 474, 19 Pac. 149; *Lancey v. King County,* 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; *Seattle v. Barto,* 31 Wash. 141, 71 Pac. 735; *State v. Fraternal Knights & Ladies,* 35 Wash. 338, 77 Pac. 500; *Callvert v. Winsor,* 26 Wash. 368, 67 Pac. 91; *State ex rel. Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110;

*Weed v. Goodwin,* 36 Wash. 31, 78 Pac. 36.   Prior laws were repealed by implication.   Laws 1907, ch. 209, § 2; *Coleman v. Cravens,* 41 Wash. 1, 82 Pac. 1005; *State v. Bergfeldt,* 41 Wash. 234, 83 Pac. 177; *Mansfield v. First Nat. Bank,* 5 Wash. 665, 32 Pac. 789, 999; *Baum v. Sweeny,* 5 Wash. 712, 32 Pac. 778; *State v. Carbon Hill Coal Co.,* 4 Wash. 422, 30 Pac. 728; *State ex rel. Dustin v. Rusk,* 15 Wash. 403, 46 Pac. 387; *Leavitt v. Chambers,* 16 Wash. 353, 47 Pac. 755. Where there is a neglect of a person to avail himself of a right given by law, he cannot after finding himself defeated at the polls ask the court to nullify the expressed will of the voters upon the error or wrong of some official which he could by reasonable diligence have had corrected.   *State ex rel. Brooks v. Fransham, supra;* Laws 1907, p. 457, ch. 209, § 25.   The legislature has power to pass a law regulating the primaries of the stronger parties and excluding the weaker parties therefrom and from its provisions.   *Kenneweg v. Allegany County Com'rs,* and *State ex rel. Adair v. Drexel, supra; State ex rel. Clawson v. Bell* (Ind.), 82 N. E. 69, 13 L. R. A. (N. S.) 1013; *State ex rel. McCarthy v. Moore,* 87 Minn. 308, 92 N. W. 4, 94 Am. St. 702, 59 L. R. A. 447.

*Merritt, Oswald & Merritt,* for respondent Hay, cited. *Healey v. Wipf* (S. D.), 117 N. W. 521; *State ex rel. Birchmore v. State Board of Canvassers* (S. C.), 59 S. E. 145, 14 L. R. A. (N. S.) 850; *State ex rel. Hewen v. Elliott,* 17 Wash. 18, 48 Pac. 734; *State ex rel. McCarthy v. Moore,* 87 Minn. 308, 92 N. W. 4, 94 Am. St. 702, 59 L. R. A. 447.

FULLERTON, J.—In these proceedings the several relators named assail the constitutionality of the act of March 15, 1907, known as the "Primary Election Law."   Laws 1907, p. 457.   While the questions presented are not the same in all the proceedings, they present many common questions, and can best be considered by treating the several proceedings as one, noticing under each separate title only those questions applicable to that particular proceeding.   It is proper to

mention, also, that the exigencies of the case require an immediate decision, and that it is for this reason that our discussion of the questions presented is somewhat perfunctory, not that we do not realize their importance and difficulty. With this explanation, we pass directly to the consideration of the merits of the controversy.

It is first contended that the act is in violation of art. 11, § 19, of the constitution, which provides that: "No bill shall embrace more than one subject and that shall be expressed in its title." The argument is that the act contains matters not germane to its title, so intermingled with matters that are germane that the valid portion cannot be separated from the invalid portion without leaving the act meaningless; and that the act, being thus void in part, and the portions remaining failing to constitute a complete and uniform act, it is void as a whole. The title of the act is as follows:

"An Act relating to, regulating and providing for the nomination of candidates for public office in the state of Washington, and providing penalties for the violation thereof, and declaring an emergency."

This court has often held that the title of an act, in order to comply with the constitutional provisions above quoted, need not be an index to the contents of the act; that the purpose of the title is to call attention to the subject-matter of the act so that any one reading it may know what matter is being legislated upon, and it is sufficient when it is broad enough to accomplish that purpose. For the various provisions constituting the act, the body of the act must be consulted, the title being neither expected nor required to give details. *State v. Scott*, 32 Wash. 279, 73 Pac. 365; *State v. Fraternal Knights & Ladies*, 35 Wash. 338, 77 Pac. 500; *Weed v. Goodwin*, 36 Wash. 31, 78 Pac. 36; *State ex rel. Osborne, Tremper & Co. v. Nichols*, 38 Wash. 309, 80 Pac. 462; *State ex rel. Zenner v. Graham*, 34 Wash. 81, 74 Pac. 1058; *Shortall v. Puget Sound Bridge & Dredging Co.*, 45 Wash. 290, 88 Pac. 212; *State v. Winsor, ante* p. 407, 97 Pac. 446. The title of the act

in question, it will be observed, is at once broad and comprehensive. Any provision which legitimately relates to, regulates, or provides for the nomination of candidates for public office in the state of Washington, can be enacted thereunder. So measured, we do not find anything within the act that is not strictly within the title.

The provisions most especially dwelt upon as being outside of the title are §§ 30 and 31, which provide that candidates who contest for a primary nomination must file an itemized statement of their expenditures incurred while endeavoring to secure a nomination, under a penalty for failure to do so; those parts of §§ 7, 9, 10, 24, and 36, and other sections, which relate to the nomination of candidates for members of the house of representatives and United States senator; § 5 providing for the payment of fees by candidates for Congressional office; and § 38 providing who shall be considered as nominees at the primary election and entitled to have their names appear on the official ballot.

But we think even these sections fairly germane to the title. The sections relating to filing itemized statements of the expenditures incurred are objectionable on account of their indefiniteness, rather than for the reasons suggested; but the legislative intent is clearly understood even on this point, and this is sufficient to comply with the constitutional requirements. The indefiniteness relates to the time when these statements are required to be filed, but in such a case the rule is that they must be filed within a reasonable time. But more than this, these sections could be eliminated without affecting the remainder of the act, and it is of but little moment in so far as the cases of these relators are concerned whether we hold the provisions valid or invalid. The nomination of candidates for the house of representatives in Congress is clearly a matter for state regulation, and such regulation may be properly provided under a title relating to the nomination of candidates for public office in the state of Washington. The title does not necessarily mean that the office for which

the person is nominated shall be in the state of Washington; it is enough if the nomination itself is to be made therein. The provisions regulating candidates for the United States senate fall within the same rule. It must be remembered that we are discussing the question whether such a provision may properly be enacted under a title such as this act possesses, not the effect or binding force of a nomination obtained thereunder. This latter question is not in these proceedings, and we express no opinion thereon. Again, it can be said of these provisions, as was said of the provision relating to the filing of the lists of expenditures, they can be eliminated without affecting any of the rights of these relators or the validity of the remainder of the act. The provision in relation to fees is within the scope of the act. The right to exact a reasonable fee for the privilege of running for office may be sustained on the principle that fees in actions and proceedings in courts and for filing and recording papers are sustained, namely, that those who seek the benefit of a particular proceeding provided by law may be compelled to reimburse the state for a portion of the costs the state incurs in maintaining the instrumentalities necessary to carry into effect the particular proceeding. In other words, the state but asks the candidates for office under a particular law to reimburse it for a part of the expenses it incurs in carrying that law into effect. This clearly the state may lawfully do. Lastly, under this head it is objected that the legislature cannot, under an act providing for the nomination of candidates, legislate with reference to the ballot to be used at the general election. But we think this contention untenable. The only purpose of the primary election was to select candidates whose names shall appear on the official ballot, and this being its sole purpose, any provision relating to that purpose must be germane to the act. We conclude, therefore, that this act in its entirety is within the scope of its official title.

It is also contended that the act is in violation of § 37, art. 11, of the constitution. That section provides that no act

shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth at full length. The evil which this provision of the constitution was intended to remedy was a habit, which often proved pernicious, of amending statutes by inserting therein certain words or substituting one phrase for another, without setting forth the act or section as it would read with the amendment inserted. This form of amendment was well calculated to mislead the careless as to its effects, and was, perhaps, sometimes drawn in that form for the express purpose of misleading, and the constitution makers wisely put a check upon it. But the provision was never intended to prevent the enactment of statutes complete in themselves which repealed or amended existing statutes. Indeed, the very purpose of a statute is to change the existing laws as to the particular matter legislated upon, and if the legislature is without power to pass such an act without first hunting up all of the provisions of the existing laws affected by it, and setting them forth as they will stand as amended, legislation is at a standstill. The act in question, as we view it, is a complete act within itself. While it necessarily changes existing statutes by superseding some and limiting the effect of others, it requires no reference to other statutes to determine its meaning in the sense prohibited by the constitution. True, it refers to other statutes in terms, and provides that in certain instances the statute referred to shall not be affected by the terms of the new statute; yet this, we think, is not amending or revising an act by mere reference to its title. The act referred to is in no wise altered or amended; no change is made in its text; its scope only is limited to the particular cases enumerated. This we hold does not require the setting forth at full length of the statute affected. The case of *Copland v. Pirie*, 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, is not contrary to this view. As explained in the case of *In re Dietrick*, 32 Wash. 471, 73 Pac. 506, we there held that the statute under consideration was merely

amendatory of a former law—not an independent act—and as such could not stand alone, or be intelligently applied without a reference to the former law.

Section 12 of the primary act provides that, when a voter at the primary election demands the ticket of a particular party and his right to vote that ticket is challenged, he shall make oath or affirmation that he intends to affiliate with the party whose ballot he demands at the ensuing election, and that he intends to support generally the candidates of that party. It is contended that this section adds a requirement to the qualifications of electors in addition to the constitutional requirements, and for that reason renders the entire act void. Were the primary election so far such an essential part of the general election as to make the constitutional provision relating to the qualification of electors entitled to vote at the general election applicable thereto, then there would be force in this objection; but we do not think the sections of the constitution providing the qualifications of electors applicable to the primary election provided for by this statute. It is not the purpose of the primary election law to elect officers. The purpose is to select candidates for office to be voted for at the general election. Being so, the qualifications of electors provided by the constitution for the general election can have no application thereto.

From the fact that the state has assumed to provide an official ballot for the general election, it must resort to some process of selection to determine the candidates whose names shall appear upon the ballot. It cannot print the names of the entire list of electors on the ballot, nor can it print thereon the name of every elector who may choose to become a candidate. Such a proceeding would make the ballot too cumbersome for any practical purpose, and in consequence the election a farce. Since, then, the state by its legislature must resort to some process of selection, the only limitation that can be put thereon is that the process adopted be reasonable. The legislature should not go to extremes in either direction.

To print the names of every person who desires to become a candidate would be an extreme in the one direction, while to print only the names of the candidates of the party dominant at the last preceding election would be an extreme in the other. But between the extremes it is at once apparent that there is a wide field for choice, within which it cannot safely be said that the legislature has violated its just discretion. The method here adopted the court cannot say is unreasonable. While it deprives some of the minority parties of privileges which might properly have been granted them, yet the legislature must protect the state against the future. A too great multiplication of parties might result if all associations of persons claiming to be such were so recognized—three tailors of Tooley street once claimed to be "the people of England"—thus entailing upon the state excessive costs in the conduct of primary elections without corresponding benefits. No doubt the qualification here complained of was inserted to protect the integrity of political parties. The legislature had provided for party ballots for use at the primary election, and it was but just that some restraint be put upon the privilege of demanding and voting a particular ballot. So far, therefore, from being an unwarranted restriction, it seems to us that if party integrity is to be preserved, this provision is highly proper and commendable, and could have been made with profit much more stringent than it actually is.

The last general objection to be noticed is that the law tends to destroy political parties. Counsel confess that they can find no specific provision of the constitution on which to base the contention, but they assert the general utility and necessity of parties, and argue therefrom that legislation tending to destroy them must receive the condemnation of the courts. It has seemed to us, however, that this is a political rather than a judicial question, and that an appeal from the legislative decision must be made to the people rather than to the courts.

We are aware that some of the conclusions reached by us on the questions discussed are not in accord with the decisions of courts of other jurisdictions on similar questions. We have not followed them because we feel them to be unsound. It would have given us more satisfaction to have noticed them at the proper place, but want of time and space forbids. The fact is mentioned here out of deference to counsel appearing for the respective parties, whose learning and patient research have brought before us all of the law extant upon the subjects discussed.

We will now notice the particular contentions. At its session in 1907, the legislative assembly created a separate judicial district from the counties of Adams, Benton and Franklin. The relator Zent was appointed judge thereof to hold office until the next general election and until his successor was elected and qualified. In due time he filed his declaration of candidacy for nomination at the primary election. The respondent Holcomb also filed a declaration of candidacy for the office of superior judge in the district of the counties named, but did not specify therein for what term he desired to become a candidate. The secretary of state, before whom the declaration was filed, construed the declaration as one for the term commencing on the second Monday in January, 1909, and placed his name upon the primary ballot as a non-partisan candidate for judge, along with the name of the relator Zent. Holcomb received a majority of the votes cast at the primary election, and was declared the nominee by the canvassing board. Zent applies to restrain the issuance of a certificate of nomination to him, and to prevent the certification of his name to the auditors of the several counties named, as the candidate for judge whose name shall appear on the official ballot.

In addition to the general objections to the constitutionality of the act already discussed, the relator makes the point that the construction placed upon the respondent's declaration was unwarranted and void, and that in consequence there is no nominee for the office of judge of the superior court for the

counties named.   This contention is unfounded.   There was indeed a short and a long term for which a judge might have been nominated, but the primary law applies to the long term only, unless specially designated otherwise.   By the second section of the act it is expressly provided "that this act [the primary election law] shall not be held to refer to special elections for filling vacancies for unexpired terms   .   .   .   ;" while § 38 provides that, where there is a vacancy in the *office of judge*, candidates may announce themselves for either the long or the short term.   But since there was no announcement made, we think the declaration could only apply to the term commencing on the second Monday in January, 1909, and the secretary of state correctly so ruled.

The relator White sought to be nominated for the office of judge of the superior court of King county, by petition as prescribed in §§ 1350 and 1352 of Ballinger's Code (P. C. §§ 4932, 4934.)   To that end he procured a certificate of nomination subscribed by the requisite number of electors, and proffered the same for filing at the office provided therein for receiving the same.   The filing was refused, and this proceeding was instituted to compel the filing of the certificate and to require the proper officers to print his name on the official ballot as a candidate for judge of the superior court of King county.   In addition to urging the invalidity of the primary law, he contends that, if the court deems the act constitutional, he is nevertheless entitled to have his name appear upon the official ballot for the reason that the statute under which he is proceeding is still in force, not having been superseded or modified by the primary election law.   The section of the primary law relating specially to the nomination of judges reads as follows:

"Sec. 38.   Judges of the supreme and superior courts, state senators and representatives shall not be considered state officers within the meaning of the provisions of this act relating to first choice and second choice voting.   When there are to be elected at any general election, two or more judges of the

supreme court or superior court of any county, the candidates for each respective office whose names are to be placed upon the general election ticket, shall be determined as follows: The number of candidates, equalling the number of judicial positions to be filled, who receive the highest number of votes at the primary election, shall be candidates for such respective offices, and their names shall appear on the general election ticket under the designation of such respective offices. Where a vacancy or other cause shall necessitate the election of a judge for a short term and at the same election one or more judges are to be elected for the full term, candidates may announce themselves for either the short or full term and the ballots shall be arranged accordingly." Laws 1907, p. 476.

Manifestly it was the purpose of this provision to do away with all other forms of nomination, in so far as the official ballot is concerned, than the one therein prescribed. The legislature by this section, whether wisely or not, has seen fit to provide for placing on the official ballot only the names of those candidates who have been nominated in the particular way pointed out. This we hold the legislature had the right to do, it being a reasonable exercise of its powers. True, it deprives minority parties, casting less than ten per centum of the entire vote, of voting at the primary election for candidates whose names are entitled to appear on the official ballot, and prevents the people from selecting by petition particular candidates and having their names put upon the official ballot. But it deprives no one of the right to vote for the candidate of his choice at the general election. He may write or paste the name of his candidate thereon and have the same counted as rightfully as if his name were printed on the ballot. This is a right the courts are uniform in maintaining. With possibly one exception, every court which has passed upon the question maintains the right of the individual elector to vote for the person of his choice for a particular office, regardless of whether his name is on the official ballot or not. Since, therefore, the elector is not deprived by this act of voting at the general election for the candidate of his choice, we

hold the act within the rightful powers of the legislature.
The relator Pendergast presents the question presented by the
relator White, and his application requires no separate dis-
cussion.

The relator Coon was a candidate for the republican nomin-
ation for the office of lieutenant governor, there being more
than four candidates for that nomination. The relator re-
ceived a plurality of all the first choice votes cast, but failed
to receive more than forty per centum of such votes, and like-
wise failed to receive a plurality of all first and second choice
votes. Notwithstanding these facts, he now contends that his
name should appear on the official ballot as the republican
nominee for the office, and by this proceeding seeks to compel
the secretary of state to so certify the ballot. The basis for
this contention is the claim that the second choice provisions
of the direct primary law are unconstitutional.

So far as this particular case is concerned, it would avail
the relator nothing to uphold his contention as to the invalid-
ity of the law, for the legislature has declared in express
terms that a candidate receiving less than forty per centum
of the first choice votes shall not be the nominee where there
are four or more candidates for any state office, and should
we declare the alternative method of nomination void, it
would simply nullify the law as to that particular office. It
would not result in the nomination of a candidate who under
the express terms of the law did not receive the requisite vote.
But this feature of the law has been assailed in other cases,
and we deem it proper to dispose of the contention made at
this time.

The principal argument against the second choice provi-
sion is that it interferes with the freedom of election guaran-
teed by the constitution, and compels the elector to vote for
a person other than the candidate of his choice. This con-
tention is untenable. The elector has the utmost freedom of
choice in casting his first choice ballot, though his choice will
not avail him unless at least forty per centum of his party

agree with him.  It was entirely competent for the legislature to provide that a candidate receiving less than forty per centum of his party vote should not be deemed its nominee, and with such a provision in the law it was incumbent on the legislature to provide some other method of nomination whenever a candidate failed to receive the required vote at the primary.  It might have provided a second primary, but a second primary would perhaps prove equally fruitless, unless the number of candidates to be voted for were restricted.  If the candidates to be voted for at the second primary were restricted to the two or three receiving the highest vote at the former primary, then all those who did not favor these particular candidates might complain with equal justice that they were compelled to vote for candidates other than those of their choice.  So long as voting is by ballot, an official ballot is a convenience if not a necessity, and some authority vested somewhere in government must determine the names which shall appear on that ballot, and those names must necessarily be few in number; and, we repeat, any reasonable method prescribed by the law-making power which accomplishes this result must be sustained by the judicial department of government.  The courts have no concern with its wisdom or policy.

The several applications are denied.

HADLEY, C. J., DUNBAR, MOUNT, and RUDKIN, JJ., concur.